**IN THE UNITED STATES DISTRICT COURT  
FOR THE NORTHERN DISTRICT OF IOWA  
EASTERN WATERLOO DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER BAUER, <br><br> Defendant. | No. CR06-2056-MWB <br><br> **REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS** |

_____

On December 6, 2006, the defendant Christopher Bauer was indicted by the grand jury and charged with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On January 12, 2007, Bauer filed a Motion to Suppress Traffic Stop (Doc. No. 10). The court scheduled a hearing on the motion for January 29, 2007, and continued the trial to allow sufficient time for a final ruling on the motion. (Doc. Nos. 11 & 12)

On January 17, 2007, the parties filed a joint motion (Doc. No. 13) to waive an evidentiary hearing on Bauer's motion to suppress. Instead, the parties agreed that a video recording of the traffic stop in question was dispositive of the issues raised in Bauer's motion, and they asked the court to rule from the video recording and their briefs. The court granted the motion and cancelled the hearing. (Doc. No. 14) On January 19, 2007, the plaintiff (the "Government") resisted Bauer's motion. (Doc. No. 15) In addition, the Government has provided the court with a copy of the video recording of the traffic stop on a DVD, which the court has marked as Court Ex. 1 and hereby makes a part of the record. The motion is now fully submitted, and the court turns to consideration of Bauer's motion to suppress.

At 2:45 a.m. on the morning of August 27, 2005, a Buchanan County, Iowa, Deputy Sheriff stopped an SUV for speeding. All relevant portions of the stop were recorded and preserved on the DVD presented to the court. (*See* Court Ex. 1)

The officer approached the driver's side of the vehicle and spoke with Bauer, who was the sole occupant of the vehicle. After a brief conversation with Bauer, the officer used his flashlight to look into the back of the SUV, where he observed a large quantity of truck parts. The officer asked Bauer where he got the truck parts, and Bauer stated that he had purchased them from Russell Automotive in Moline, Illinois.

At about 2:49 a.m., the officer returned to his vehicle and spoke with the dispatcher. From this conversation, it appeared that Bauer had been involved in theft charges in the past, and had been observed in the area of a recent theft. It also appeared there was some discrepancy between where Bauer had told the officer he was living and where the police believed he was living. Nevertheless, the officer told dispatch, "I'll be releasing him soon."

At 2:52 a.m., the officer returned to the SUV and asked Bauer to get out of the vehicle to speak with him for a moment. The officer told Bauer he would be issuing a warning ticket for the speeding violation, and he talked with Bauer briefly about Bauer's employment. The officer then stated that he was not accusing Bauer of anything, but Bauer's name had come up in connection with a theft. At 2:54 a.m., the officer asked Bauer if he would have any problem with the officer taking some serial numbers off of the parts that were in the SUV. Bauer stated he would have no problem with that, and he gave permission for the officer to look in his SUV. Before opening the back of the vehicle, the officer informed Bauer that he did not have to agree to let the officer look in the SUV, and Bauer again consented to let the officer look in the SUV. As the officer began to open the SUV, another officer who had arrived at the scene approached and asked Bauer to step aside during the search. The first officer opened the back of the SUV at about 2:55 a.m.,

2

and almost immediately he observed a firearm in the SUV.  The other officer placed Bauer in handcuffs, and at 2:56 a.m., Bauer was advised of his *Miranda* rights.  A short time later, Bauer admitted that he was a convicted felon.

The entire encounter between the police and Bauer, from the time he was stopped to the time he was arrested, lasted about ten minutes.  Throughout the encounter, the officers were entirely professional.  There is nothing in the record that even suggests they coerced Bauer's consent to the search of his vehicle, or that the consent was in any way involuntary.

Bauer argues the traffic stop "violated the confines of *Minnesota v. Dickerson*, 508 U.S. 366, 374-75, 113 S. Ct. 2130, 2136-37, 124 L. Ed. 2d 334 (1993), and or the 'plain view doctrine.'"  (Doc. No. 10-1, ¶ 4)  He argues the auto parts in the back of his SUV were not inherently incriminating and, therefore, they did not provide justification for the officer "to seek and obtain consent from [Bauer] to search his [SUV]."  (Doc. No. 10-2, p. 4)

The "plain view doctrine" allows officers who are "lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object [to] seize it without a warrant." *Dickerson*, 508 U.S. at 374-75, 113 S. Ct. at 2136-37 (citations omitted).  The plain view doctrine is irrelevant to the officer's actions in this case.  The officer asked Bauer for consent to look in the back of his SUV, and Bauer consented.  Before opening the back of the SUV, the officer even went so far as to advise Bauer that he did not have to consent.  Again, Bauer consented to allow the officer to look inside the SUV.

"Law enforcement officers do not violate the Fourth Amendment by asking a person for consent to search or other types of cooperation, even when they have no reason to suspect that person, 'provided they do not induce cooperation by coercive means.'" *United States v. Yang*, 345 F.3d 650, 654 (8th Cir. 2003) (citing *United States v. Drayton*,

536 U.S. 194, 201, 122 S. Ct. 2105, 2110, 153 L. Ed. 2d 242 (2002); *United States v. Jones*, 269 F.3d 919, 925 (8th Cir. 2001)). Here, there is no evidence that the officers used any coercive means to induce Bauer's cooperation. Bauer has failed to show any basis for suppression of the evidence discovered during the traffic stop.

Therefore, **IT IS RESPECTFULLY RECOMMENDED** that Bauer's motion to suppress be **denied**.

Any party who objects to this report and recommendation must serve and file specific, written objections by **January 29, 2007**. Any response to the objections must be served and filed by **February 2, 2007.**

**IT IS SO ORDERED.**

**DATED** this 22nd day of January, 2007.

PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT